**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

|  |  |
|---|---|
| ELZBIETA ASHLEY, | |
|                Plaintiff, | |
|     v. | |
| FEDERAL EXPRESS CORPORATION, | Case No. 3:21-cv-00068-SLG |
|                Defendant. | |

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

Plaintiff Elzbieta Ashley initiated this action against her former employer, Federal Express Corporation ("FedEx"), in Alaska Superior Court in December 2020.[1] Ms. Ashley seeks damages for retaliation and breach of the implied covenant of good faith and fair dealing.[2] FedEx removed the action to federal court on March 24, 2021.[3] Before the Court is FedEx's motion for summary judgment.[4] The Court heard oral argument on the motion on October 19, 2022.[5]

---

[1] *3AN-20-09639CI Ashley, Elzbieta vs. Federal Express Corp PRR*, CourtView Public Access Website Alaska Court System, https://records.courts.alaska.gov/eaccess (click "search cases"; enter "3AN-20-09639CI"; click "search"; and then click either link under "Case Number" heading) (last modified Mar. 24, 2021). Ms. Ashley filed an amended complaint in state court on February 24, 2021. Docket 8 at 3-10 (Am. Compl.).

[2] Docket 8 at 7-10 ¶¶ 21-29 (Am. Compl.).

[3] Docket 1 (Notice of Removal).

[4] Docket 21 (Mot. Summ. J.).

[5] Docket 33 (Min. Entry).

## BACKGROUND

This case concerns an employment dispute arising from events occurring in the years preceding Ms. Ashley's retirement from FedEx in December 2018. Although the parties dispute some of the details concerning these events, the majority of the facts relevant to the Court's disposition of the instant motion appear to be undisputed.[6]

In October 1998, Ms. Ashley began working for FedEx in Anchorage, Alaska, as a part-time "checker/sorter" who loaded airplanes.[7] Ms. Ashley suffered an injury at work in December 2000 that limited her to carrying no more than ten pounds at a time.[8] As a result of this medical restriction, Ms. Ashley accepted a new position at FedEx in June 2005 as a part-time operations agent, a role in which she processed employee timecards.[9] Holding this position until her retirement in December 2018, Ms. Ashley often shared timecard-processing duties with other

---

[6] The Court relies primarily on the factual allegations set forth in Ms. Ashley's amended complaint at Docket 8; Ms. Ashley's affidavit in support of her opposition to FedEx's summary judgment motion at Docket 28-1; the excerpts of deposition testimony from Ms. Ashley and her former supervisor, George Kendall, to which the parties cite in their briefing (Ms. Ashley filed the complete deposition transcripts at Docket 34-1 and Docket 34-2, respectively); and the 33 exhibits FedEx submitted in support of its summary judgment motion at Docket 21-2. FedEx's exhibits at Docket 21-2 include materials in Ms. Ashley's FedEx personnel file, materials related to a complaint Ms. Ashley filed against FedEx with the Alaska State Commission for Human Rights, deposition excerpts, and FedEx corporate policies and agreements.

[7] Docket 28-1 at 1-2 ¶¶ 3, 7 (Ashley Aff.).

[8] Docket 28-1 at 2 ¶ 7.

[9] Docket 28-1 at 2 ¶ 7.

Case 3:21-cv-00068-SLG   Document 38   Filed 03/17/23   Page 2 of 45

operations agents.[10]  She describes herself as "a successful, highly praised, well-regarded, and valued employee."[11]

Ms. Ashley reports that her experience working for FedEx was positive until 2014 or 2015 when a new manager, George Kendall, began supervising her.[12] Under Mr. Kendall's supervision, Ms. Ashley alleges that she faced "hostility in the workplace, harassment and discrimination."[13]  She attributes some of this hostility to Mr. Kendall's own actions, including his allegedly "making frequent comments about [Ms. Ashley's] age, medical conditions, and physical limitations resulting from her on-the-job injuries, and . . . making false accusations against her."[14]  Ms. Ashley also asserts that Mr. Kendall favored her younger colleagues at her expense by changing her work schedule without consideration of her preferences and non-work obligations.[15]  Ms. Ashley further alleges that FedEx tolerated "discrimination and taunting" from her peers in the form of disrespectful statements targeting her status as a foreign-born American who speaks English as a second language.[16]

---

[10] Docket 28-1 at 1 ¶ 3, 3-5 ¶¶ 11-20.

[11] Docket 8 at 4 ¶ 4 (Am. Compl.).

[12] Docket 28-1 at 2 ¶ 8.

[13] Docket 8 at 4 ¶ 8 (Am. Compl.).

[14] Docket 8 at 5 ¶ 9 (Am. Compl.).

[15] Docket 8 at 5 ¶¶ 11-12 (Am. Compl.).

[16] *See* Docket 8 at 5 ¶ 10 (Am. Compl.) (alleging that one of Ms. Ashley's peers greeted her with

Ms. Ashley's personnel file corroborates the change she describes in her relationship with FedEx after Mr. Kendall became her supervisor. That file identifies only a handful of minor issues from 2011 through early 2015 related to attendance, punctuality, and working excess hours.[17] In September 2015, however, Ms. Ashley received the first in a series of disciplinary actions, warnings, or "documented counselings" related to her "conduct."[18] Then, on April 26, 2017, FedEx placed Ms. Ashley "on suspension with pay pending investigation of potential violation of the Acceptable Conduct Policy P2-5."[19] A subsequent warning letter, dated May 1, 2017, described "multiple" instances in which Ms. Ashley's "behavior was disruptive," finding that she "initiated conversations

---

the phrase, "Hello, Mafia!" and another repeatedly asked her when she would "return to China").

[17] Docket 21-2 at 125-29 (Ashley Personnel R.).

[18] Docket 21-2 at 125-26 (Ashley Personnel R.). Ms. Ashley's personnel file includes two records from 2015 reflecting such documented counselings, one dated September 12, 2015 and the other dated September 15, 2015, in which Ms. Ashley received copies of policies concerning acceptable employee conduct, compliance and business conduct, and a "Workplace Violence Prevention Program-Acknowledgment Form." Docket 21-2 at 124-26 (Ashley Personnel R.). No other information about these records is provided, and they were not a focus of the parties' briefing or deposition testimony.

[19] Docket 21-2 at 31 (April 26, 2017 Inter-office Mem. re Investigative Suspension with Pay). FedEx's Acceptable Conduct Policy P2-5 establishes FedEx's expectation that its employees will "demonstrate the highest degree of integrity, responsibility, and professional conduct at all times." Docket 21-2 at 21 (FedEx Acceptable Conduct Policy). Among other things, the policy establishes conduct-related expectations, describes prohibited behavior, defines "misconduct," and memorializes the internal procedures FedEx follows in investigating and responding to alleged violations of the policy and disciplining employees. Docket 21-2 at 21-29 (FedEx Acceptable Conduct Policy).

multiple times regarding another employee's previous conduct" and "spent time on the clock talking on the phone to a co-worker who was not at work."[20]

In response to the paid suspension and warning letter, Ms. Ashley filed a complaint with the Alaska State Commission for Human Rights (the "ASCHR") on May 30, 2017, alleging that FedEx discriminated against her on the basis of her age and national origin and retaliated against her for complaining about the workplace harassment and discrimination she faced.[21] Before the ASCHR responded to Ms. Ashley's complaint with a final decision, FedEx again placed Ms. Ashley on investigative suspension with pay on January 22, 2018 after one of her colleagues, fellow operations agent Lyle Turner, complained that Ms. Ashley "created a hostile work environment."[22] An investigation from FedEx management into Mr. Turner's allegations concluded:

> Turner and Ashley started having problems when Turner turned in a security officer for using his phone in the training room. Ashley did not approve of this and told him he was no angel because he was doing his school work while at work. On 01/14/18 Turner walked past Ashley's office and said "hola Gangster". Ashley did not say anything to Turner about it on the 14th. On the [sic] 01/15/18 Turner asked why Ashley was late when they arrived at work. Ashley and Turner were

---

[20] Docket 21-2 at 33 (May 1, 2017 Inter-Office Mem. re Warning Letter 06-35- Disruptive Behavior). Ms. Ashley challenged this warning letter through FedEx's internal "Guaranteed Fair Treatment Process" ("GFTP"), but FedEx upheld the decision to issue the warning letter, noting that "by [her] own admission, [Ms. Ashley] acknowledged that [her] behavior and actions were considered disruptive by policy." Docket 21-2 at 42 (May 10, 2017 Inter-office Mem. re Step I GFTP Meeting); Docket 21-2 at 44 (May 17, 2017 Inter-Office Mem. re Step I GFTP Response).

[21] Docket 21-2 at 49-50 (May 30, 2017 ASCHR Compl.).

[22] Docket 21-2 at 54 (January 22, 2018 Inter-office Mem. re Investigative Suspension with Pay); Docket 21-2 at 52 (Turner Letter).

Case No. 3:21-cv-00068-SLG, *Ashley v. Fed. Express Corp.*
Order Regarding Motion for Summary Judgment
Page 5 of 45

talking back in [sic] forth in the hallway about a foot apart. Ashley followed Turner to the office he works in and told him if he did not change his behavior she was going to report him to their manager. There was no physical contact between Turner and Ashley as they both stated during their interviews. Video footage shows Turner and Ashley in the hallway and they appear to be talking to each other. Ashley does follow Turner to the doorway of his office and stops there. Ashley appears to be saying something to Turner from the doorway of his office.[23]

A resulting documented counseling letter, dated February 10, 2018, found that Ms. Ashley "participated in disruptive behavior and contributed to a hostile work environment" because she "spoke in an abusive tone and manner to a co-worker" and "it was alleged [she] had made many threatening, intimidating, and or [sic] abusive statements about previous peers and [her] manager."[24] Ms. Ashley was not otherwise disciplined in express relation to this incident. However, another memorandum issued on the same day contained a "Performance Reminder because of [Ms. Ashley's] failure to maintain a satisfactory attendance rating."[25] FedEx gave Ms. Ashley a paid day off (i.e., a "Decision Day") to decide whether she wished to remain employed with FedEx.[26] Ms. Ashley did not terminate her employment with FedEx at that point in time.

---

[23] Docket 21-2 at 61 (FedEx February 1, 2018 Inter-office Mem. re Workplace Violence).

[24] Docket 21-2 at 63 (FedEx February 10, 2018 Inter-office Mem. re Documented Counseling Acceptable).

[25] Docket 21-2 at 70 (FedEx February 10, 2018 Inter-office Mem. re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

[26] Docket 21-2 at 70 (FedEx February 10, 2018 Inter-office Mem. re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

On February 26, 2018, FedEx placed Ms. Ashley on investigative suspension with pay after another incident with Mr. Turner in which she accused him of "block[ing] her from exiting a room and . . . follow[ing] her into another."[27] Following an investigation by management, a resulting documented counseling letter found that security video footage contradicted Ms. Ashley's accusations and instead showed that she exhibited "disruptive" behavior in violation of FedEx's Acceptable Conduct Policy by removing timecards from Mr. Turner's office and inhibiting his ability to complete his tasks.[28] Subsequently, on March 19, 2018, Ms. Ashley filed another complaint with the ASCHR, alleging that FedEx retaliated against her for filing her initial ASCHR complaint in violation of Alaska Statute § 18.80.220 and Title VII of the Civil Rights Act of 1964 ("Title VII").[29] The ASCHR dismissed Ms. Ashley's complaint on September 17, 2018, finding "no evidence [FedEx] retaliated against [Ms. Ashley] for filing a complaint of discrimination" and that Ms. Ashley's "allegations are not supported by substantial evidence."[30] In support of these findings, the ASCHR cited FedEx's internal investigations into the

---

[27] Docket 21-2 at 78 (FedEx February 26, 2018 Inter-office Mem. re Investigative Suspension with Pay); Docket 21-2 at 95 (March 1, 2018 FedEx Inter-office Mem. re Allegation of Workplace Violence). Mr. Turner received an identical suspension on the same day. Docket 21-2 at 80 (FedEx February 26, 2018 Inter-office Mem. re Investigative Suspension with Pay).

[28] Docket 21-2 at 103 (FedEx March 10, 2018 Inter-office Mem. re Written Documented Counseling).

[29] Docket 21-2 at 106 (March 19, 2018 ASCHR Compl.).

[30] Docket 21-2 at 67 (ASCHR Determination).

events leading to Ms. Ashley's investigative suspensions, the February 2018 "Performance Reminder/Decision Day," and the documented counseling letters, concluding that the "[e]vidence did not reveal that [Ms. Ashley] was disciplined or that the documented counseling had a discriminatory or retaliatory motive."[31] Although the ASCHR's September 17, 2018 determination letter acknowledges Ms. Ashley's initial ASCHR complaint from May 2017, the letter does not expressly issue a determination regarding the discrimination claims raised in Ms. Ashley's initial complaint.[32] Ms. Ashley remained employed without any further issues documented in her personnel file until she retired on December 8, 2018.[33]

In her February 24, 2021 amended complaint, Ms. Ashley characterizes her retirement as "coerced," "involuntary," and "motivated by the employer's disciplinary actions, including suspensions, repeated harassments, and taunting and discrimination based on [her] nation of origin."[34] Without specifying any substantive sources of law, Ms. Ashley asserts two causes of action against

---

[31] Docket 21-2 at 67 (ASCHR Determination).

[32] *See generally* Docket 21-2 at 66-67 (ASCHR Determination). The Court's record does not contain a separate determination letter by the ASCHR on the first complaint filed with that agency.

[33] Docket 21-2 at 119 (Retirement Announcement Letter).

[34] Docket 8 at 7 ¶ 20 (Am. Compl.).

FedEx: (1) retaliation and (2) breach of the implied covenant of good faith and fair dealing.[35]  FedEx moves for summary judgment on both claims.[36]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case."[37]  If the movant meets this burden, the non-moving party must "designate 'specific facts showing that there is a genuine issue for trial.'"[38] The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[39]

When evaluating the record to decide a motion for summary judgment, a court must "view the facts and draw reasonable inferences" in the light most favorable to the non-moving party.[40]  However, when the non-moving party's

---

[35] Docket 8 at 7-10 ¶¶ 21-29 (Am. Compl.).

[36] *See generally* Docket 21.

[37] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[38] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[39] *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

[40] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted).

version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[41] The Ninth Circuit Court of Appeals has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."[42]

In evaluating summary judgment motions on employment discrimination claims, a district court must focus on determining whether genuine issues of material fact are in dispute rather than "weighing . . . the evidence and making findings."[43] The Ninth Circuit has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses."[44] Still, it is proper for a district court to grant summary judgment in favor of an employer when an employee has "'created only a weak issue [of fact]' . . . against a backdrop of 'abundant and uncontroverted independent evidence that no discrimination has occurred.'"[45]

---

[41] *Id.* at 380.

[42] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)) (citing *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989)); *see also Oakley, Inc. v. McWilliams*, 584 F. App'x 528, 529 (9th Cir. 2014) ("[A party's] self-serving and uncorroborated declarations . . . are insufficient to avert summary judgment . . . ." (citation omitted)).

[43] *Taybron v. City and County of San Francisco*, 341 F.3d 957, 959 (9th Cir. 2003).

[44] *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (citations omitted).

[45] *Opara v. Yellen*, 57 F.4th 709, 726 (9th Cir. 2023) (citation omitted) (quoting *Reeves v.*

## JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and do not dispute that the amount in controversy exceeds $75,000.[46]

## DISCUSSION

FedEx advances several arguments in its motion for summary judgment. It first contends that Ms. Ashley cannot establish that the company retaliated against her.[47] In making this argument, FedEx focuses on two discrete events that, in its view, arguably could constitute "protected activities": (1) Ms. Ashley's filing of ASCHR complaints and (2) an instance in which Ms. Ashley reported Mr. Turner for allegedly having a firearm in his vehicle while he was at work.[48] FedEx claims

---

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

[46] *See* Docket 8 at 3 ¶ 2 (Am. Compl.) ("Plaintiff is and has been a resident and inhabitant of the Third Judicial District, Alaska, for over 20 years."); Docket 1 at 2 ¶ 6 ("FedEx is a Delaware corporation, with its principal place of business in Shelby County, Memphis [sic] Tennessee and is thus a citizen of Tennessee and Delaware."). Ms. Ashley's complaint does not specify an amount in controversy, but FedEx contends that the jurisdictional minimum is satisfied based on the categories of damages Ms. Ashley seeks in her complaint. *See* Docket 1 at 2 ¶ 7 ("Plaintiff's Amended Complaint contemplates an amount in excess of $75,000 . . . in that it seeks compensatory damages including past, present, and future economic losses, damages to her personal, professional and occupational reputation, for intentional and negligent infliction of emotional distress and any other damages available."); Docket 8 at 9 (Am. Compl.) ("[P]laintiff prays for the recovery of money . . . so as to compensate plaintiff for her past, present, and future economic losses resulting from the defendant's discriminatory and retaliatory conduct; for damages to her personal, professional and occupational reputation; [and] for defendant's intentional and negligent infliction of emotional distress . . . ."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (finding combination of largely unspecified compensatory, punitive, and emotional distress damages and attorney's fees sufficient to meet the $75,000 minimum for diversity jurisdiction).

[47] Docket 21 at 4-14.

[48] Docket 21 at 4. Despite devoting attention in its briefing to the second issue, FedEx also

Case No. 3:21-cv-00068-SLG, *Ashley v. Fed. Express Corp.*
Order Regarding Motion for Summary Judgment
Page 11 of 45

that it did not retaliate against Ms. Ashley for engaging in either of these activities because it did not subject her to severe harassment; there was no causal link between these activities and any alleged adverse employment actions taken against her; and FedEx had legitimate, non-discriminatory reasons for any discipline imposed on Ms. Ashley.[49] FedEx also asserts that it did not breach the implied covenant of good faith and fair dealing because it did not terminate Ms. Ashley's employment or act in bad faith in a manner that unfairly caused her economic harm or hardship.[50] As support, FedEx points to Ms. Ashley's documented attendance issues and disruptive behavior as well as the similar treatment she received compared to her peers.[51] Lastly, FedEx maintains that, to the extent Ms. Ashley has asserted a claim for constructive discharge, such claim must fail because (1) any negative consequence Ms. Ashley faced resulted from her own conduct and performance and (2) she was not subject to "violent acts, racial slurs, derogatory remarks, physical threats, or extreme emotional distress."[52]

The Court address these arguments and Ms. Ashley's responses in turn.

---

contends that Ms. Ashley's reporting Mr. Turner for having a firearm does not constitute a protected activity. Docket 21 at 12-13.

[49] Docket 21 at 5-14.

[50] Docket 21 at 14-18.

[51] Docket 21 at 11-12, 14, 18.

[52] Docket 21 at 18-19.

## I.    Retaliation

Citing the *McDonnell Douglas*[53] framework that applies to employment retaliation cases under both Alaska and federal law, FedEx contends that Ms. Ashley cannot establish a prima facie case of retaliation.[54]  And even if she can establish a prima facie case, FedEx maintains that it had legitimate, non-discriminatory reasons for any adverse employment actions Ms. Ashley faced because of her attendance issues and disruptive behavior.[55]  Ms. Ashley responds by claiming that "[t]here are triable issues of fact related to whether [her] working conditions became so intolerable that a reasonable person in her position would have felt compelled to resign."[56]  Ms. Ashley also contends that she can make her case outside of the *McDonnell Douglas* framework by producing "'direct or circumstantial evidence demonstrating that a discriminatory reason' motivated the employer."[57]

---

[53] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[54] Docket 21 at 3-4 (citing *Raad v. Alaska State Comm'n for Hum. Rts.*, 86 P.3d 899, 904 (Alaska 2004)).

[55] Docket 21 at 11-12, 14.

[56] Docket 28 at 7 (citing *Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir. 1982)).

[57] Docket 28 at 8 (quoting *Stovall v. ASRC Energy Servs. – Hous. Contracting Co.*, Case No. 3:18-cv-00259-TMB, 2021 WL 3361680, at *7 (D. Alaska Aug. 2, 2021)).

## A. Applicable Law

The Court begins its analysis by noting that Ms. Ashley's complaint does not specify whether she is asserting her retaliation claim pursuant to Alaska law[58] or federal law, namely Title VII.[59] Her opposition to FedEx's motion for summary judgment cites exclusively Title VII and federal caselaw.[60] FedEx urges the Court to refrain from considering Ms. Ashley's claim under federal law because she did not reference Title VII in her amended complaint and did not meet the exhaustion requirement applicable to Title VII claims.[61]

The Court finds that, while it appears that Ms. Ashley has not exhausted a possible claim for constructive discharge under Title VII,[62] she did exhaust her administrative remedies with respect to her retaliation claim because her second ASCHR complaint alleged retaliation.[63] Further, Ms. Ashley's omission of a

---

[58] Alaska Stat. §18.80.220.

[59] 42 U.S.C. § 2000e-2.

[60] *See generally* Docket 28.

[61] Docket 30 at 8-9 (Reply Br. Supp. Mot. Summ. J.).

[62] Docket 21-2 at 49-50 (May 30, 2017 ASCHR Compl.); Docket 21-2 at 106 (March 19, 2018 ASCHR Compl.). The record does not contain any complaints filed with the U.S. Equal Employment Opportunity Commission (the "EEOC") or the ASCHR in which Ms. Ashley alleged a constructive discharge claim following her retirement.

[63] *See Rush v. Dep't of Health & Soc. Servs.*, No. 3:16-cv-00233-SLG, 2019 WL 2346628, at *7 (D. Alaska June 3, 2019) (noting ability to satisfy Title VII's exhaustion requirement by filing "a timely charge of discrimination with the EEOC *or with a corresponding state agency*" (emphasis added) (citing 42 U.S.C. § 2000e-5(e))); *Kelly v. Matanuska Elec. Ass'n, Inc.*, No. 3:09-cv-0027-HRH, 2010 WL 11566468, at *8 (D. Alaska Aug. 30, 2010) (finding plaintiff exhausted administrative remedies by filing charges with the ASCHR and the Anchorage Equal Rights Commission); Docket 21-2 at 106 (March 19, 2018 ASCHR Compl.) ("I allege that respondent has retaliated against me for filing a complaint of discrimination in violation of AS 18.80.220, and

federal statutory reference does not warrant the summary dismissal of a federal claim, particularly as Ms. Ashley's second ASCHR complaint identified both Alaska law and Title VII as legal support underlying her retaliation claim, her amended complaint lodged in this Court pleads enough facts to support a Title VII claim, and her opposition to FedEx's summary judgment motion expressly cites Title VII.[64] Accordingly, the Court will consider her retaliation claim pursuant to both Alaska and federal law.

## B. Analysis

### 1. Prima Facie Case of Retaliation under the *McDonnell Douglas* Framework

To establish a prima facie case of retaliation using the *McDonnell Douglas* framework pursuant to Title VII or Alaska law, a plaintiff must show: "(1) a protected activity; (2) an adverse employment action; and (3) a causal link between the

---

Title VII of the Civil Rights Act of 1964 . . . .").  The Court notes that there was a significant delay between when Ms. Ashley received a determination from the ASCHR (September 17, 2018) and when she filed suit in the Alaska Superior Court (December 8, 2020), but the parties have not briefed the Court on any applicable statutes of limitation.  *See* Docket 21-2 at 66-68 (September 17, 2018 ASCHR Determination); *3AN-20-09639CI Ashley, Elzbieta vs. Federal Express Corp PRR*, CourtView Public Access Website Alaska Court System, https://records.courts.alaska.gov/eaccess (click "search cases"; enter "3AN-20-09639CI"; click "search"; and then click either link under "Case Number" heading) (last modified Mar. 24, 2021) (showing December 8, 2020 filing date of Ms. Ashley's complaint in the Alaska Superior Court). Because the potential statute of limitations issue is not fully briefed, the Court will consider the parties' substantive arguments.

[64] *See Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (a complaint need not "pin plaintiff's claim for relief to a precise legal theory" to survive a motion to dismiss); Docket 21-2 at 106 (March 19, 2018 ASCHR Compl.); Docket 8 at 3-10 (Am. Compl.); Docket 28 at 7-8; *Faurie v. Berkeley Unified Sch. Dist.*, No. C 08-0060 TEH., 2008 WL 820682, *4 (N.D. Cal. 2008) (finding plaintiff met burden to identify statutes underlying retaliatory discharge claim by citing statutory provisions in opposition to defendants' motion to dismiss).

protected activity and the adverse employment action."[65]  "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in [42 U.S.C.] § 2000e–2(m).  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[66]

The parties agree that Ms. Ashley engaged in a protected activity when she filed the ASCHR complaints.[67]  Although Ms. Ashley's complaint also alleges that her reporting Mr. Turner for keeping a firearm in his car "was . . . a protected activity," Ms. Ashley's opposition does not respond to FedEx's argument that this action was not a protected activity.[68]  By failing to respond to FedEx's argument, Ms. Ashley has waived that issue and the Court finds as a matter of law that summary judgment in FedEx's favor is warranted on that aspect of its retaliation claim.[69]  Regardless, there is no indication from the caselaw that reporting a

---

[65] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006) (citation omitted); *Raad*, 86 P.3d at 905.

[66] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

[67] Docket 21 at 4; Docket 28 at 4.

[68] Docket 8 at 6-7 ¶¶ 15-17 (Am. Compl.); Docket 21 at 12-13 ("[N]ot only does Ashley fail to establish that keeping a firearm in a vehicle is unlawful, she has not even identified a FedEx policy that prohibits the conduct.  Accordingly, she has failed to establish a protected activity."); *see generally* Docket 28 (failing to address FedEx's argument).

[69] *See Lesane v. Hawaiian Airlines, Inc.*, CIVIL NO. 19-00179 JAO-KJM, 2020 WL 1078763, at *8 n.16 (D. Haw. Mar. 6, 2020) (finding plaintiff's failure to respond to defendants' argument constitutes waiver and concession that summary judgment is warranted in defendants' favor); *cf. Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (holding that failure to raise argument in opposition to summary judgment motion in district court proceedings constitutes waiver of that argument on appeal because district court did not have opportunity to consider argument).

colleague for violating a neutral policy—FedEx's alleged prohibition, if any, on employees' bringing firearms to the workplace—is a protected activity.[70] Thus, the Court will proceed with its analysis of Ms. Ashley's retaliation claim only as it relates to the protected activity of filing ASCHR complaints.

The Court next considers whether Ms. Ashley suffered an adverse employment action. An adverse employment action is a "materially adverse" action that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[71] It includes "actions 'materially affect[ing] compensation, terms, conditions, or privileges' of employment."[72] Courts have identified a wide range of activities as potentially constituting adverse employment actions, including verbal abuse and intimidation, requiring an employee to work outside of the confines of their medical restrictions, tampering with timesheets, physical attacks, denying a transfer request, instituting lockdown procedures, eliminating employee programs, reducing an employee's workload, and changing an employee's physical workspace.[73]

---

[70] *Cf. Bowles v. United States*, No. CV11-1474 PHX DGC, 2011 WL 6182330, at *4 (D. Ariz. Dec. 13, 2011) (finding that reporting a person for possessing alcohol at firing range not protected activity).

[71] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

[72] *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (alteration in original) (first quoting 42 U.S.C. § 2000e-2(a)(1); and then quoting *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109 (9th Cir. 2000)).

[73] *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (termination, failure to promote, denial of transfer, or refusal to hire); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) (verbal abuse and intimidation); *Ray v. Henderson*, 217 F.3d 1234,

It is difficult to discern from Ms. Ashley's amended complaint and opposition to FedEx's summary judgment motion precisely which adverse employment actions Ms. Ashley alleges FedEx took against her in retaliation for her ASCHR complaints and when, precisely, each such action occurred. Nonetheless, based on a careful reading of Ms. Ashley's filings, the Court interprets Ms. Ashley's amended complaint and summary judgment briefing to allege that FedEx undertook the following adverse employment actions against her: (1) Mr. Kendall's verbal harassment and false accusations concerning Ms. Ashley's conduct, (2) discrimination and taunting from Ms. Ashley's peers, (3) changes to Ms. Ashley's work schedule and workspace, (4) deliberately hiding timecards Ms. Ashley had to process, (5) punishing Ms. Ashley for using her cellular phone to call a colleague during working hours, (6) undertaking various formal personnel actions (e.g., investigative suspensions, documented counselings, warnings, and a "Performance Reminder/Decision Day") in January and February 2018 for "disruptive behavior" and "excessive absences," and (7) Ms. Ashley's constructive termination.[74] The Court addresses these alleged actions to determine whether

_____

1243-44 (9th Cir. 2000) (institution of lockdown procedures, elimination of employee programs, and reduced workload); *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000) (change of workspace); *Cloud v. DeJoy*, No. 19-cv-04638-TSH, 2022 WL 4349832, at *3 (N.D. Cal. Sept. 19, 2022) (requirement to work outside of the confines of medical restrictions, tampering with timesheets, physical attacks).

[74] *See* Docket 8 at 5-7 ¶¶ 9, 12-13, 20 (Am. Compl.) (Mr. Kendall's alleged verbal harassment and accusations); Docket 28 at 4 (same); Docket 8 at 5 ¶ 10 (Am. Compl.) (alleged discrimination and taunting); Docket 28 at 5-7 (same); Docket 8 at 5 ¶ 11 (Am. Compl.) (schedule and workspace changes and hiding timecards); Docket 8 at 6 ¶ 14 (Am. Compl.) (punishment for using cellular phone); Docket 8 at 7 ¶ 19 (Am. Compl.) (punishment for

they constitute adverse employment actions under the law and, if so, whether any genuine dispute of material fact exists with respect to their occurrence. Only then will the Court consider whether a genuine dispute of material fact exists as to whether these actions were causally related to Ms. Ashley's filing ASCHR complaints.

As an initial matter, any action predating the filing of Ms. Ashley's first ASCHR complaint on May 30, 2017 cannot properly be considered an adverse employment action for the purpose of Ms. Ashley's retaliation claim since that complaint was the first protected activity in which Ms. Ashley engaged. This is because for an employee to prevail on a retaliation claim, the adverse employment action must have taken place after the protected activity.[75] Therefore, Ms. Ashley's April 2017 investigative suspension with pay and May 1, 2017 warning letter for using her cellular phone to call a colleague during working hours cannot be considered retaliatory adverse employment actions.[76] Likewise, any allegedly false accusations Mr. Kendall may have lodged against Ms. Ashley in the related

_____

"disruptive behavior" and "excessive absences"); Docket 8 at 7 ¶ 20 (Am. Compl.) (constructive termination); Docket 28 at 7-9 (same).

[75] *See Cornwell*, 439 F.3d at 1035 (affirming district court's grant of summary judgment to defendants because protected activity occurred after adverse employment action); *Raad*, P.3d at 908 (accepting hearing examiner's dismissal of retaliation claims because of lack of evidence that school principals knew about discrimination complaint before making hiring decisions).

[76] Docket 21-2 at 31 (April 26, 2017 Inter-office Mem. re Investigative Suspension with Pay); Docket 21-2 at 33-34 (May 1, 2017 Inter-office Mem. re Warning Letter 06-35- Disruptive Behavior).

GFTP process, which concluded by May 17, 2017, as well as Mr. Kendall's referring to Ms. Ashley as "having paranoia" in 2015, cannot be retaliation for the subsequently filed ASCHR complaints.[77]  Ms. Ashley's schedule change also took place before she filed her first ASCHR complaint, as she raised concerns about it in an April 20, 2017 letter to the senior manager of FedEx's Anchorage hub, Ryan Ruble.[78]

It appears from the record that the remaining adverse employment actions Ms. Ashley alleges took place after May 30, 2017 or on dates left unclear from the record before the Court.  The Court addresses each such allegation in turn.

### a. Alleged Verbal Harassment and False Accusations from Mr. Kendall

Ms. Ashley's amended complaint alleges that Mr. Kendall "deliberately humiliated her, making frequent comments about [her] age, medical conditions, and physical limitations resulting from her on-the-job injuries, and by making false accusations against her."[79]  The complaint also alleges that she was "unfairly and discriminatorily disfavored" by Mr. Kendall, who "repeatedly humiliated [her] by

---

[77] Docket 21-2 at 42 (May 10, 2017 Inter-office Mem. re Step I GFTP Meeting); Docket 21-2 at 44 (May 17, 2017 Inter-office Mem. re Step I GFTP Response); Docket 21-2 at 46-47 (May 10, 2017 Letter to Ms. Ashley re Disciplinary Letter); *see also* Docket 34-1 at 132:4-25, 133:1-3 (Ashley Dep.) (acknowledging that Mr. Kendall described Ms. Ashley as exhibiting paranoia during a 2015 meeting between Ms. Ashley, Mr. Kendall, and a former colleague, Mallory Fisk).

[78] Docket 21-2 at 121 (April 20, 2017 Letter from Ashley to Ryan Ruble re Schedule Changes).

[79] Docket 8 at 5 ¶ 9 (Am. Compl.).

summoning her to attend meetings with other managers, at which she was falsely accused of 'disruptive behavior.'"[80]

In some circumstances, "repeated and ongoing verbal harassment and humiliation" can rise to the level of an adverse employment action, but typically only when there exists some other form of harm.[81]  "[M]ere ostracism in the workplace is not enough to show an adverse employment decision."[82]  The record before the Court does not support Ms. Ashley's claims that Mr. Kendall verbally harassed her to a level approaching "repeated and ongoing verbal harassment and humiliation" after she filed either ASCHR complaint.[83]  Mr. Kendall admitted that he made a comment about Ms. Ashley's "having paranoia," which, by itself, is unlikely to constitute repeated verbal harassment rising to the level of an adverse employment action and, in any event, was made years before Ms. Ashley's protected activities.[84]  There is no indication from the record that Mr. Kendall

---

[80] Docket 8 at 5-6 ¶¶ 12-13 (Am. Compl.).

[81] *See Ray*, 217 F.3d 1245 ("Repeated derogatory or humiliating statements, however, can constitute a hostile work environment."); c*f. Coszalter v. City of Salem*, 320 F.3d 968, 976-77 (9th Cir. 2003) (holding that, when taken together with other actions, "repeated and ongoing verbal harassment and humiliation" amounted to adverse employment actions in the context of a First Amendment retaliation case); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996) (finding verbal and physical abuse by doctors sufficient to demonstrate adverse employment decision), *as amended on denial of reh'g* (Apr. 22, 1996), *as amended on denial of reh'g* (June 3, 1996).

[82] *Strother*, 79 F.3d at 869 (citation omitted).

[83] *Coszalter*, 320 F.3d at 976.

[84] *See* Docket 34-2 at 19:20-25, 20:1-17 (Kendall Dep.) (acknowledging that Mr. Kendall commented during or around September 2015 that, in his view, Ms. Ashley exhibited paranoid or anxious behavior); Docket 34-1 at 132:4-25, 133:1-3 (Ashley Dep.) (acknowledging that Mr.

repeatedly referred to Ms. Ashley as exhibiting paranoia after she filed either ASCHR complaint.

Ms. Ashley's filings also generally allege that Mr. Kendall made "frequent" comments about her age, medical conditions, and physical limitations, but the record does not substantiate these allegations.[85] Apart from the paranoia comment, Ms. Ashley's affidavit supporting her opposition identifies only two other specific statements made by Mr. Kendall after he learned of Ms. Ashley's first ASCHR complaint and her plans to inform FedEx upper-level managers about her concerns.[86] Mr. Kendall allegedly responded to this information by asking Ms. Ashley, "Do you know how serious this letter is?" and stating, "No, you don't; you don't go to talk with nobody [sic]."[87] For the purposes of this summary judgment motion, the Court will assume that Mr. Kendall made both of these statements. Even so, they do not rise to the level of "[r]epeated derogatory or humiliating statements" that courts have found equate to adverse employment actions.[88] Both statements, while far from representing the most appropriate responses from a person with supervisory authority over an employee who believes she has been

---

Kendall's paranoia comment was made during a 2015 meeting).

[85] *E.g.*, Docket 8 at 5 ¶ 9 (Am. Compl.).

[86] Docket 28-1 at 5 ¶ 21, 6 ¶ 23.

[87] Docket 28-1 at 5 ¶ 21, 6 ¶ 23.

[88] *Ray*, 217 F.3d at 1245.

wrongly treated in the workplace, appear to be isolated statements made in the heat of the moment after a "clearly upset" Mr. Kendall learned about Ms. Ashley's ASCHR complaint.[89]  Ms. Ashley does not allege that they were repeated.  Nor did they relate to Ms. Ashley's age, medical conditions, or physical limitations.  And they clearly did not have a chilling effect on Ms. Ashley, as she nevertheless raised her concerns to others in the FedEx organization.[90]  At worst, these statements were "mere ostracism in the workplace," not adverse employment actions.[91]

Beyond the statements specifically referenced in her briefing, Ms. Ashley's lengthy deposition contains a number of other statements providing some support for her claims, such as an allegation that Mr. Kendall said to her, "You are old woman."[92]  However, these statements are uncorroborated accusations not reflected elsewhere in the record.  In the absence of other evidence, such as deposition testimony from other employees or documentation of these statements, these allegations are insufficient to reach the level of a genuine dispute of material fact as to whether Ms. Ashley faced repeated and ongoing verbal harassment from Mr. Kendall.[93]  As the Court indicated during oral argument, it will not parse through

---

[89] Docket 28-1 at 5 ¶ 21.

[90] *See* Docket 34-1 at 125:9-12 (Ashley Dep.) (noting that FedEx had a meeting with Ms. Ashley after she sent a letter to FedEx management).

[91] *Strother*, 79 F.3d at 869; *see also Ray*, 217 F.2d at 1245 ("Not every insult or harassing comment will constitute a hostile work environment.").

[92] Docket 34-1 at 85:21 (Ashley Dep.).

[93] *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997)

the hundreds of pages of deposition testimony to find additional evidence supporting Ms. Ashley's allegations when she had ample opportunity to bring any other specific allegations to the Court's attention.[94] Having considered the alleged statements from Mr. Kendall that Ms. Ashley specifically brought to the Court's attention, the Court finds that no reasonable jury could conclude that after the first ASCHR was filed, Mr. Kendall subjected Ms. Ashley to repeated and ongoing verbal harassment or humiliation that rose to the level of an adverse employment action.

Ms. Ashley also claims that Mr. Kendall made "false accusations" against her.[95] Ms. Ashley refers to an accusation from Mr. Kendall that Ms. Ashley "hid[] information" by failing to report another employee's untruthfulness.[96] Ms. Ashley also identifies a suspension in which Mr. Kendall found Ms. Ashley to have

---

("[C]onclusory allegations . . . without factual support, are insufficient to defeat summary judgment." (citation omitted)); *cf. Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." (citations omitted)), *as amended* (Apr. 11, 1997).

[94] Docket 36 at 19:7-8 ("And I'm only going to consider the pages [of the deposition testimony] that were cited in the briefing."); *see also Carmen v. S.F. Unified Sch. District*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("[T]he district court may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file *and specifically referred to and facts therein set forth in the motion papers*." (emphasis added)); *Rafferty v. Keypoint Gov't Sols., Inc.*, Case No: 4:16-cv-00210-DCN, 2020 WL 7038952, at *13 (D. Idaho Nov. 30, 2020) ("When a party relies on deposition testimony in a summary judgment motion or opposition without citing to specific page and line numbers, the trial court may in its discretion exclude such evidence." (citing *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002)).

[95] Docket 8 at 5-6, 7 ¶ 13, 19 (Am. Compl.).

[96] Docket 28 at 3.

exhibited "disruptive behavior" because she discussed a performance issue related to another employee.[97]  Even if both of these allegations are true, they both predated the filing of Ms. Ashely's first ASCHR complaint.  The "hiding information" accusation related to a former employee, Mallory Fisk, who was fired well before Ms. Ashley's first ASCHR complaint.[98]  Likewise, the suspension resulting from Ms. Ashley's allegedly speaking about another employee's performance took place in April 2017, and Ms. Ashley received the warning letter citing disruptive behavior on May 1, 2017.[99]  Neither of these events can be linked to the subsequently filed ASCHR complaints.

To the extent Ms. Ashley claims that Mr. Kendall made other false accusations about her, she does not cite any specific instances in her opposition or supporting affidavit.[100]  Nor is there any indication from the record that Mr. Kendall made any false accusations against Ms. Ashley in connection with the formal personnel actions described in her file.  Each documented counseling letter citing Ms. Ashley's "disruptive behavior" resulted from an internal investigation

---

[97] Docket 28 at 3-4.

[98] *See* Docket 34-1 at 51:7-8, 53:3-5 (Ashley Dep.) (attributing the "hiding the information" accusation to a situation involving Ms. Fisk); Docket 34-1 at 132:4-13 (Ashley Dep.) (describing 2015 meeting between Ms. Ashley, Mr. Kendall, and Ms. Fisk in which Mr. Kendall made the "paranoia" comment); Docket 34-1 at 134:24-25, 135:1 (Ashley Dep.) ("[Ms. Fisk] was terminated right away after the paranoia [comment was made].").

[99] Docket 21-2 at 33 (May 1, 2017 Inter-Office Mem. re Warning Letter 06-35- Disruptive Behavior).

[100] *See generally* Docket 28; Docket 28-1.

from FedEx personnel—including others apart from Mr. Kendall—that supported the claims of "disruptive behavior" made against Ms. Ashley in those letters. For example, Ms. Ashley's February 10, 2018 documented counseling letter followed an investigation memorialized in a February 1, 2018 memorandum, and her March 10, 2018 documented counseling letter followed an investigation memorialized in a March 1, 2018 memorandum.[101] Neither of these documents reveal that Mr. Kendall falsely accused Ms. Ashley of exhibiting disruptive behavior, and each lists the specific reasons supporting the finding that Ms. Ashley exhibited "disruptive behavior."[102] In short, Ms. Ashley has failed to designate specific facts that show that there is a genuine dispute of material fact as to whether Mr. Kendall made false accusations against Ms. Ashley after she filed the first ASHRC complaint.

### b. Discrimination and Taunting from Ms. Ashley's Peers

Ms. Ashley alleges that she "was subject to discrimination and taunting as a foreign-born American for whom English is her second language."[103] Ms. Ashley points to alleged statements from Sarah Chivers and Mr. Turner, two of Ms.

---

[101] Docket 21-2 at 56-61 (FedEx February 1, 2018 Inter-office Memorandum re Workplace Violence); Docket 21-2 at 63-64 (FedEx February 10, 2018 Inter-office Memorandum re Documented Counseling Acceptable); Docket 21-2 at 95-101 (March 1, 2018 FedEx Inter-office Memorandum re Allegation of Workplace Violence); Docket 21-2 at 103-04 (FedEx March 10, 2018 Inter-office Memorandum re Written Documented Counseling).

[102] Docket 21-2 at 56-61 (FedEx February 1, 2018 Inter-office Memorandum re Workplace Violence); Docket 21-2 at 63-64 (FedEx February 10, 2018 Inter-office Memorandum re Documented Counseling Acceptable); Docket 21-2 at 95-101 (March 1, 2018 FedEx Inter-office Memorandum re Allegation of Workplace Violence); Docket 21-2 at 103-04 (FedEx March 10, 2018 Inter-office Memorandum re Written Documented Counseling).

[103] Docket 8 at 5 ¶ 10 (Am. Compl.).

Ashley's peers. Ms. Chivers allegedly asked Ms. Ashley when she would "return to China," and Mr. Turner allegedly greeted her with the words "Hello, Mafia."[104] Ms. Ashley testified that Ms. Chivers made the China comment once, while Mr. Turner made the Mafia comment a "few times."[105]

The Court will construe these statements as offensive and mean spirited to Ms. Ashley. However, Title VII is not a "general civility code."[106] "[C]onduct must be extreme to amount to a change in the terms and conditions of employment . . . ."[107] While perhaps an unfortunate reality in some workplaces, "the sporadic use of abusive language, gender-related jokes, and occasional teasing" does not, without more, establish a hostile work environment.[108] The limited instances in which Ms. Chivers and Mr. Turner made the comments demonstrate that they did not change the conditions of Ms. Ashley's employment or rise to the level of "repeated and ongoing verbal harassment and humiliation."[109]

Additionally, an employer is only liable for its employees' retaliatory harassment if it encourages or tolerates the harassment.[110] There is no indication

---

[104] Docket 8 at 5 ¶ 10 (Am. Compl.); Docket 28 at 3 (China comment); Docket 28 at 5 (Mafia comment).

[105] Docket 34-1 at 92:9-25, 93:1-18 (Ashley Dep.).

[106] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) (citations omitted).

[107] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted).

[108] *Id.* (citing B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

[109] *Coszalter*, 320 F.3d at 976.

[110] *Watson v. Las Vegas Valley Water Dist.*, 268 F. App'x 624, 627 (9th Cir. 2008) ("[E]mployers

from the record that Mr. Kendall or anyone else at FedEx in a supervisory position was aware of the alleged China and Mafia comments made to Ms. Ashley.[111] Without awareness of those comments, FedEx cannot be held liable for them. This does not mean that the comments may not have been hurtful to Ms. Ashley, but that potential hurtfulness does not in this situation constitute an adverse employment action by FedEx.

### c. Change to Ms. Ashley's Workspace

Ms. Ashley alleges that FedEx modified the location of her workspace "by placement of her in a smaller office than the office she previously occupied[]."[112] Under certain circumstances this might constitute an adverse employment action.[113] However, Ms. Ashley admitted during her deposition that the only other two similarly situated employees at the time, Mr. Turner and Linda Ruiz, also faced the same or similar workspace modifications.[114] Ms. Ashley cannot demonstrate that she suffered an adverse employment action when her colleagues with the

are not vicariously liable for retaliatory harassment by coworkers; rather, it is only the employer's encouragement or toleration of such harassment that may constitute an adverse employment action." (citations omitted)).

[111] *See generally* Docket 28; Docket 28-1; Docket 34-2 at 36:22-25, 37:1-2 (Kendall Dep.) (stating no awareness of the Mafia comment at the time it was made).

[112] Docket 8 at 5 ¶ 11 (Am. Compl.).

[113] *Cf. Novak v. England*, 316 F. App'x 671, 673 (9th Cir. 2009) (reversing district court's grant of summary judgment in age discrimination action in light of existence of genuine issue of material fact as to whether plaintiff was reassigned to perform work falling below his job description and relocated to an overflow area).

[114] Docket 34-1 at 101:20-25, 102:1-12 (Ashley Dep.).

same job titles or duties as her, but who did not file ASCHR complaints, were subject to the same or similar workspace modifications.[115]

### d. Deliberately Hiding Timecards

Ms. Ashley alleges that "[t]imecards were deliberately hidden from her in an attempt to diminish [her] productivity."[116] Ms. Ashley's briefing does not clearly identify the specific event or events to which she refers in relation to this claim. It is possible that Ms. Ashley is referring to conflicts or events involving Ms. Fisk, Ms. Chivers, or Mr. Turner.[117] But as discussed below, regardless of which event or events are at issue, the record does not demonstrate genuine issue of fact.

First, beyond Ms. Ashley's statements, there is no evidence in the record substantiating the claim that the timecards Ms. Ashley was tasked with processing were hidden from her or that her productivity was diminished. Second, as noted above, "employers are not vicariously liable for retaliatory harassment by coworkers; rather, it is only the employer's encouragement or toleration of such harassment that may constitute an adverse employment action."[118] FedEx

---

[115] *See Thomas v. Spencer*, 294 F. Supp. 3d 990, 1000 (D. Haw. 2018) (finding no adverse employment action existed when the plaintiff received the same or more overtime hours as his similarly situated colleagues).

[116] Docket 8 at 5 ¶ 11 (Am. Compl.).

[117] *See, e.g.*, Docket 28 at 2-3 (alleging that Ms. Fisk falsified timecards and, on a separate occasion, "it was discovered that time cards were missing" after Ms. Chivers quit her job); Docket 21-2 at 95-101 (March 1, 2018 Inter-office Memorandum re Allegation of Workplace Violence) (describing conflict between Ms. Ashley and Mr. Turner involving timecards).

[118] *Watson*, 268 F. App'x at 627.

Case No. 3:21-cv-00068-SLG, *Ashley v. Fed. Express Corp.*
Order Regarding Motion for Summary Judgment
Page 29 of 45

management became aware of separate timecard-related disputes involving Ms. Chivers and Mr. Turner, and both of them were suspended in relation to those incidents.[119] Ms. Fisk was fired for falsifying timecards.[120] These actions show that, even if other employees hid timecards from Ms. Ashley and management became aware of those events, FedEx did not encourage or tolerate such behavior. To the contrary, FedEx took action to investigate the claims. And, in the case of the dispute involving Mr. Turner, management found that Ms. Ashley, rather than Mr. Turner, exhibited disruptive behavior. In the documented counseling letter following that incident, management noted that Ms. Ashley had "removed all work (timecards) from [her] co-worker's office," leading to Mr. Turner's "being without any work (timecards) to enter."[121] In sum, Ms. Ashley has not demonstrated that a genuine dispute of material fact exists as to whether she faced an adverse employment action from any of the timecard-related incidents.

### e. Negative Personnel Actions

FedEx acknowledges that the February 10, 2018 "Performance Reminder/Decision Day" letter Ms. Ashley received was an adverse employment

---

[119] *See* Docket 34-1 at 152:19-25, 153:1-2 (Ashley Dep.) (stating that Ms. Chivers was suspended at some point in time after the timecard incident); Docket 21-2 at 80 (February 26, 2018 Inter-office Memorandum re Investigative Suspension with Pay) (suspending Mr. Turner).

[120] Docket 34-1 at 134:24-25, 135:1-4, 258:21 (Ashley Dep.).

[121] Docket 21-2 at 103 (March 10, 2018 Inter-office Memorandum re Written Documented Counseling).

action.[122]   Citing FedEx policy and caselaw interpreting FedEx policies, FedEx maintains that the other actions Ms. Ashley faced—documented counseling letters and investigative suspensions—"are not disciplinary in nature."[123]   Ms. Ashley does not rebut these arguments in her opposition and thereby waives an opportunity to contest them.[124]   Even if Ms. Ashley had not waived this argument, and as discussed below, Ms. Ashley has not demonstrated that there are genuine issues of material fact as to FedEx's legitimate, non-discriminatory reasons for taking action against Ms. Ashley due to her documented attendance and behavioral issues that are unrelated to her filing of the ASCHR complaints.

The Court turns to whether there is evidence of a causal link between FedEx's issuance of the February 10, 2018 "Performance Reminder/Decision Day" letter and Ms. Ashley's filing of the ASCHR complaints.[125]   Clearly, there can be no link between that action and the filing of the second ASCHR complaint, as the

---

[122] Docket 21 at 10; Docket 21-2 at 70-71 (FedEx February 10, 2018 Inter-office Memorandum re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

[123] Docket 21 at 9 (first citing Docket 21-1 at 6 ¶ 26 (FedEx Statement of Undisputed Material Facts); then citing *Freeman v. Fed. Express Corp.*, No. 804CV2481T24TBM, 2006 WL 563123, at *9 (M.D. Fla. Mar. 8, 2006); and then citing *Feaster v. Fed. Express Corp.*, C/A No. 2:13-cv-2517 DCN, 2014 WL 4269082, at *3 n.2 (D.S.C. Aug. 28, 2014), *aff'd*, 599 F. App'x 63 (4th Cir. 2015)).

[124] *See Lesane v. Hawaiian Airlines, Inc.*, CIVIL NO. 19-00179 JAO-KJM, 2020 WL 1078763, at *8 n.16 (D. Haw. Mar. 6, 2020) (finding plaintiff's failure to respond to defendants' argument constitutes waiver and concession that summary judgment is warranted in defendants' favor); *cf. Abogados v. AT&T, Inc.*, 223 F.3d 932, 937 (9th Cir. 2000) (holding that failure to raise argument in opposition to summary judgment motion in district court proceedings constitutes waiver of that argument on appeal because district court did not have opportunity to consider argument).

[125] Docket 21-2 at 70-71 (FedEx February 10, 2018 Inter-office Memorandum re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

second complaint was not filed until March 19, 2018, after the letter had been issued.

With respect to the first ASCHR complaint, even when the facts are viewed in the light most favorable to Ms. Ashley, the record before the Court does not contain any evidence to support a causal link. The "Performance Reminder/Decision Day" letter does not reference Ms. Ashley's first ASCHR complaint.[126] Instead, it cites Ms. Ashley's "failure to maintain a satisfactory attendance rating" and references meetings on March 27, 2017 and December 19, 2017 concerning her attendance rating and the May 1, 2017 warning letter she received for disruptive behavior.[127] FedEx issued the May 1, 2017 warning letter before Ms. Ashley's filed her first ASCHR complaint on May 30, 2017, so that cannot be a basis for retaliation. Likewise, the March 27, 2017 attendance discussion predates the first ASCHR complaint. Although the December 19, 2017 attendance discussion followed the May 30, 2017 complaint, it did so by nearly seven months. Additionally, the record reveals that this meeting followed two instances on December 5 and 6, 2017 in which Ms. Ashley did not report to work.[128]

---

[126] Docket 21-2 at 70-71 (FedEx February 10, 2018 Inter-office Memorandum re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

[127] Docket 21-2 at 70 (February 10, 2018 Inter-office Memorandum re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

[128] See Docket 21-2 at 132 (Ashley Attendance R.) (noting "S-4:00," compared to entries beginning with "W," in Ms. Ashley's attendance record for December 5 and 6, 2017); Docket 21-1 at 8 ¶ 40 (FedEx Statement of Undisputed Material Facts) ("[Ms. Ashley] called out on December 5 and December 6, 2017.").

It is legitimate, not discriminatory, for FedEx to warn Ms. Ashley about its attendance expectations two weeks after she missed two days of work and amidst a broader history of attendance issues.[129] In short, Ms. Ashley has not demonstrated any genuine issue of fact that might suggest that Fed Ex's decision to conduct the December 2017 attendance discussion was in any way related to her filing of the ASCHR complaint in May 2017, particularly when the record lacks any indication that FedEx singled out Ms. Ashley in addressing her attendance issues while letting other employees with attendance issues evade discipline.[130] Moreover, the considerable time lag between the filing of Ms. Ashley's first ASCHR complaint in May 2017 and FedEx's issuance of the "Performance Reminder/Decision Day" letter in February 2018 is further indication that no causal link between FedEx's employment actions and Ms. Ashley's ASCHR filings exists.[131]

---

[129] *See* Docket 21-2 at 124-29 (Ashley Personnel R.) (summarizing documented counseling records related to attendance issues); Docket 21-1 at 8 ¶ 40 (FedEx Statement of Undisputed Material Facts) (noting August 16, 2017 counseling for attendance issues and that "[Ms. Ashley] called out on December 5 and December 6, 2017"); Docket 21-2 at 132 (Ashley Attendance R.) (noting "S-4:00," compared to entries beginning with "W," in Ms. Ashley's attendance record for December 5 and 6, 2017).

[130] *Cf. Rahmani v. Neiman Marcus Grp., Inc*, No C-04-3313 VRW, 2006 WL 8459733, at *4 (N.D. Cal. Sept. 30, 2006) (describing evidence in record supporting an inference that employee was singled out for attendance issues when other employees with worse attendance records did not face similar consequences).

[131] *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding 20-month gap between employment action and protected activity insufficient to establish causality and identifying cases where federal appellate courts have found three- and four-month gaps similarly insufficient (citations omitted)); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (collecting cases where courts held that lapses of four, five, eight, and twelve months between protected activity and adverse employment action were "too long . . . to give

Case No. 3:21-cv-00068-SLG, *Ashley v. Fed. Express Corp.*
Order Regarding Motion for Summary Judgment
Page 33 of 45

Ms. Ashley's briefing does not offer any such causal evidence. Her primary argument in support of a causal link appears to be Mr. Kendall's paranoia comment, but as discussed above, that comment was made years before Ms. Ashley filed her first ASCHR complaint.[132] Ms. Ashley also contends that FedEx relied upon false accusations when it disciplined her for disruptive behavior and excessive absences.[133] At some level, it is curious that the "Performance Reminder/Decision Day" letter was provided to Ms. Ashley on the same day that she received a documented counseling for disruptive behavior following the January 2018 dispute with Mr. Turner regarding the timecards, yet the "Performance Reminder/Decision Day" letter does not mention the documented counseling letter.[134] This may have been intentional since FedEx does not consider documented counseling letters as disciplinary in nature.[135] Regardless, even if the "Performance Reminder/Decision Day" letter was implicitly related to

---

rise to an inference of causation" (citations omitted)).

[132] *See* Docket 28 at 4 (seemingly offering paranoia comment as evidence that FedEx retaliated against Ms. Ashley "because of her protected activity"); Docket 34-2 at 19:20-25, 20:1-17 (Kendall Dep.) (acknowledging that Mr. Kendall commented during or around September 2015 that, in his view, Ms. Ashley exhibited paranoid or anxious behavior); Docket 34-1 at 132:4-25, 133:1-3 (Ashley Dep.) (acknowledging that Mr. Kendall's paranoia comment was made during a 2015 meeting).

[133] Docket 8 at 7 ¶ 19 (Am. Compl.).

[134] Docket 21-2 at 63-64 (FedEx February 10, 2018 Inter-office Mem. re Documented Counseling Acceptable); Docket 21-2 at 70-71 (February 10, 2018 Inter-office Memorandum re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

[135] *See* Docket 21-2 at 134 (FedEx Performance Improvement Policy) ("Documented counselings are ineligible for the GFTP process because they are not disciplinary in nature." (citation omitted)).

FedEx's findings that Ms. Ashley engaged in disruptive behavior in January 2018, the record does not reveal that any of those findings was based on false or incorrect information. As noted above, FedEx conducted internal investigations of the events leading to each of Ms. Ashley's documented counseling letters.[136] Those investigations involved FedEx managers—in addition to Mr. Kendall—who were not involved in the underlying dispute leading to Ms. Ashley's suspensions.[137] Similarly, FedEx issued Ms. Ashley the "Performance Reminder/Decision Day" letter following multiple meetings concerning her attendance rating and the May 1, 2017 warning letter she received for disruptive behavior.[138] In sum, Ms. Ashley has not demonstrated that a material issue of fact exists as to the lack of a causal connection between Ms. Ashley's ASCHR complaints and the February 10, 2018 "Performance Reminder/Decision Day" letter.

### f. Constructive Discharge

Asserting that her retirement was "coerced" and "involuntary" as a result of the disciplinary actions, harassment, taunting, and discrimination she faced, Ms.

---

[136] Docket 21-2 at 56-61 (FedEx February 1, 2018 Inter-office Memorandum re Workplace Violence); Docket 21-2 at 63-64 (FedEx February 10, 2018 Inter-office Memorandum re Documented Counseling Acceptable); Docket 21-2 at 95-101 (March 1, 2018 FedEx Inter-office Memorandum re Allegation of Workplace Violence); Docket 21-2 at 103-04 (FedEx March 10, 2018 Inter-office Memorandum re Written Documented Counseling).

[137] *See* Docket 21-2 at 56-61 (FedEx February 1, 2018 Inter-office Memorandum re Workplace Violence) (investigation conducted by Jeremiah Williams, Security Specialist III); Docket 21-2 at 95-101 (March 1, 2018 FedEx Inter-office Memorandum re Allegation of Workplace Violence) (investigation conducted by Chris Turcic, Senior Security Specialist).

[138] Docket 21-2 at 70 (February 10, 2018 Inter-office Memorandum re Performance Reminder/Decision Day/01-1-DD Unsat Attendance).

Ashley appears to allege that she suffered an adverse employment action when she was constructively terminated from her job.[139]  In support, Ms. Ashley cites three cases interpreting federal pleading standards.[140]  Ms. Ashley appears to cite these cases for the proposition that she need not have expressly alleged a constructive discharge claim in her complaint in order for that claim to survive at the summary judgment stage.  Ms. Ashley also contends that her affidavit and deposition "may warrant a finding by an impaneled jury that she was working under conditions that were intolerable, and sufficient to establish a constructive discharge."[141]  In its reply, FedEx asks the Court to refrain from considering this issue because Ms. Ashley has not properly alleged a constructive discharge claim in her amended complaint and, to the extent she alleges this as part of a Title VII claim, has not exhausted all administrative remedies.[142]  In the alternative, if the Court considers this issue, FedEx maintains that Ms. Ashley has not proffered sufficient evidence to show that a reasonable person in her circumstances "would

---

[139] Docket 8 at 7 ¶ 20 (Am. Compl.); Docket 28 at 9.

[140] Docket 28 at 9 (first citing *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011); then citing *Swierkiewicz v. Sorema N.A.*, 543 U.S. 506 (2002); and then citing *Scheuer v. Rhodes Krause*, 416, U.S. 232, 236 (1974)).

[141] Docket 28 at 9.

[142] Docket 30 at 7-9.

have been compelled to resign."[143]  FedEx also asserts that there is no evidence Ms. Ashley was treated differently from her colleagues.[144]

The Court finds that Ms. Ashley has adequately pled the facts necessary to allege a constructive discharge in her amended complaint.[145]  Ms. Ashley further intimated in her opposition to FedEx's summary judgment that she views her allegedly wrongful constructive discharge as an adverse employment action.[146]

FedEx has a stronger argument that Ms. Ashley may not have exhausted a possible constructive discharge claim since she has not filed any complaints with the EEOC or ASCHR with respect to her termination.  Although FedEx's briefing does not explicitly make this point, counsel for FedEx explained during oral argument that Ms. Ashley "did not indicate in her [ASCHR complaint] charge that there was a constructive discharge."[147]  The Court agrees with FedEx that Ms. Ashley did not exhaust her administrative remedies to the extent she seeks to pursue a wrongful constructive discharge claim under Title VII.  Ms. Ashley does not appear to dispute this point, or at least she does not do so persuasively.

---

[143] Docket 30 at 7.

[144] Docket 30 at 8.

[145] *See* Docket 8 at 7 ¶ 20 (Am. Compl.) ("On December 8, 2018, the plaintiff, motivated by the employer's disciplinary actions, including suspensions, repeated harassments, and taunting and discrimination based on the plaintiff's nation of origin, formally retired, but her retirement should be understood to have been coerced and to have thus been involuntary.").

[146] Docket 28 at 9.

[147] Docket 30 at 8-9; Docket 36 at 11:17-18.

However, the Court will consider Ms. Ashley's constructive discharge argument to the extent she seeks to offer her allegedly coerced retirement as evidence of an adverse employment action that FedEx took against her in retaliation for her ASCHR complaints.

Ms. Ashley is correct that a "[w]rongful constructive discharge would be an adverse employment action."[148]  A constructive discharge "occurs when the working conditions deteriorate . . . to the point that they become 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer.'"[149]  A district court may grant an employer's summary judgment motion on a constructive discharge claim when no "reasonable trier of fact could find that [the plaintiff] was driven from the workplace."[150]  This is a higher standard than a hostile work environment claim, which requires a plaintiff to demonstrate "severe or pervasive harassment."[151]

As discussed extensively in this order, Ms. Ashley has not presented evidence from which a reasonable juror could find that FedEx subjected her to such egregiously deteriorated working conditions as a result of her filing of the

---

[148] *Summar v. Potter*, 355 F. Supp. 2d 1046, 1058 (D. Alaska 2005).

[149] *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (quoting *Turner v. Anheuser–Busch, Inc.*, 876 P.2d 1022 (1994)).

[150] *Id.*

[151] *Id.*

ASCHR complaints so as to drive her from the workplace. The formal actions FedEx took against Ms. Ashley were non-disciplinary in nature or followed documented findings, supported by internal investigations, that Ms. Ashley engaged in disruptive or unproductive behavior in violation of company policies. Other changes, such as the modification of Ms. Ashley's schedule and workspace, applied equally to other employees. The potentially offensive verbal remarks directed at Ms. Ashley came from her peers, without evidence that management was aware of or tolerated them, or otherwise did not reach the threshold necessary to change the conditions of Ms. Ashley's employment. In short, no reasonable trier of fact could find that these actions or conditions were "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee" to stay at their job.[152] Nor could a trier of fact find that these actions or conditions of employment were causally related to the filing of the ASCHR complaints. No genuine dispute of material fact exists as to whether Ms. Ashley was constructively discharged when she left FedEx in December 2018.

### 2. Direct or Circumstantial Evidence of Retaliation

As a final argument supporting her retaliation claim, Ms. Ashley seems to suggest that she can "produce direct or circumstantial evidence demonstrating that a discriminatory reason" motivated the adverse employment action FedEx took

---

[152] *Id.* (quoting *Turner*, 876 P.2d at 1022).

against her.[153]  But Ms. Ashley has not offered direct or circumstantial evidence of a discriminatory motive for the "Performance Reminder/Decision Day" letter.  To the contrary, FedEx has offered the legitimate business reasons for which it disciplined Ms. Ashley, which were to give her an opportunity to reflect on, and possibly correct, the attendance and behavioral issues documented in prior counseling and warning letters.  That Ms. Ashley did not seem to have received any disciplinary or counseling letters after that point through her retirement is further indication that FedEx's reasons for subjecting Ms. Ashley to the "Performance Reminder/Decision Day" were not only non-discriminatory but also effective in improving her performance.

In light of the above, the Court finds that FedEx is entitled to summary judgment on Ms. Ashley's retaliation claim.  To the extent Ms. Ashley asserts a separate claim for constructive discharge, FedEx is entitled to summary judgment on that claim as well.

## II.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Ms. Ashley's amended complaint alleges that FedEx breached the implied covenant of good faith and fair dealing "by disciplining her for allegedly disruptive behavior and allegedly excessive absences, based on false allegations; by retaliating against her for filing her complaint of discrimination; by defaming the plaintiff; and by subjecting the plaintiff to economic harm and hardship; and by

---

[153] Docket 28 at 8 (quoting *Stovall*, 2021 WL 3361680, at *7).

compelling plaintiff to resign her employment."[154]  In its summary judgment motion,

FedEx evaluates both the objective and subjective breaches of the implied

covenant of good faith and fair dealing.  FedEx contends that neither category of

breach applies because (1) FedEx had no bad-faith motive to deprive Ms. Ashley

of any job benefits; (2) Ms. Ashley merely had personality disputes with her

colleagues and Mr. Kendall; (3) FedEx treated similarly situated employees

similarly; and (4) FedEx had legitimate reasons for the actions it took since Ms.

Ashley had attendance issues and engaged in disruptive behavior.[155]  In her

opposition, Ms. Ashley does not engage substantively with FedEx's legal

arguments and instead recites facts that she proposes demonstrate FedEx's unfair

treatment of her.[156]

As a general rule under Alaska law, "[w]hether an employer's action

breached the covenant of good faith and fair dealing is a question for the trier of

fact."[157]  Implied in all at-will employment contracts in Alaska, the covenant of good

faith and fair dealing "does not lend itself to precise definition, but it requires at a

minimum that an employer not impair the right of an employee to receive the

---

[154] Docket 8 at 9 ¶ 29 (Am. Compl.).

[155] Docket 21 at 14-18 (Mot. Summ. J.).

[156] *See generally* Docket 28.  The Court could find that Ms. Ashley has waived this claim given her mostly non-substantive response to FedEx's legal arguments, but it nonetheless will evaluate the facts Ms. Ashley offers in her opposition in light of the governing legal standards.

[157] *Crowley v. State, Dep't of Health & Social Servs.*, 253 P.3d 1226, 1230 (Alaska 2011).

benefits of the employment agreement."[158]  The covenant also requires that the "employer treat like employees alike."[159]  "An employer can commit either an objective or subjective breach of the covenant."[160]  The objective component "prohibits the employer from dealing with the employee in a manner that a reasonable person would regard as unfair."[161]  "Unfair actions include disparate employee treatment, terminations on grounds that are unconstitutional, and firing that violates public policy."[162]  "The subjective component focuses on the employer's motives"; it requires a showing that the employer's decision to terminate the employee was "actually . . . motivated by an improper or impermissible objective."[163]  "The plaintiff must show more than just speculation about the motives for the termination."[164]

Although the question of whether FedEx breached the implied covenant of good faith and fair dealing ordinarily would be for a trier of a fact under Alaska law,

---

[158] *Jones v. Cent. Peninsula Gen. Hosp.*, 779 P.2d 783, 789 (Alaska 1989).

[159] *Id.* at 789 n. 6.

[160] *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 62 (Alaska 2002) (citation omitted); *see also Thomas v. State*, 377 P.3d 939, 948 (Alaska 2016) ("An employer can breach either component.").

[161] *Smith v. Anchorage Sch. Dist.*, 240 P.3d 834, 844 (Alaska 2010) (quoting *Mitchell v. Teck Cominco Alaska, Inc.*, 193 P.3d 751, 761 (Alaska 2008)).

[162] *Montella v. Chugachmiut*, 283 F. Supp. 3d 774, 780 (D. Alaska 2017) (citing *Crowley*, 253 P.3d at 1232).

[163] *Crowley*, 253 P.3d at 1230.

[164] *Montella*, 283 F. Supp. 3d at 780 (citing *Thomas*, 377 P.3d at 948).

Case 3:21-cv-00068-SLG   Document 38   Filed 03/17/23   Page 42 of 45

the summary judgment standard of Federal Rule of Civil Procedure 56 applies in federal court.[165]   Under that standard, a non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[166]

In Ms. Ashley's amended complaint—the only filing in which she substantively addresses her claim for breach of the implied covenant of good faith and fair dealing—she bases her claim on the five factual allegations outlined above.[167]   The Court already has evaluated three of them in detail in Part I of this order.   As discussed there, no reasonable jury could find that FedEx disciplined Ms. Ashley on false allegations, retaliated against her for filing the ASCHR complaints, or compelled her to resign her employment.   This leaves two factual allegations that Ms. Ashley maintains support this claim: (1) FedEx defamed Ms. Ashley, and (2) FedEx subjected Ms. Ashley to economic harm and hardship.[168]

Neither of these allegations is supported by the record.   First, Ms. Ashley does not allege any facts demonstrating defamation; nor does the record show

---

[165] *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (affirming district court's application of federal summary judgment standard rather than state's summary judgment standard after case removed from state court).

[166] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

[167] Docket 8 at 9 ¶ 29 (Am. Compl.).

[168] Docket 8 at 9 ¶ 29 (Am. Compl.).

that FedEx defamed her. To be defamatory, a statement must first be false.[169] As discussed at length, FedEx has offered legitimate reasons for its statements made regarding Ms. Ashley in the disciplinary proceedings or before the ASCHR. FedEx supported each statement by an investigation, record, or factual finding.[170] Ms. Ashley has not met her burden to identify evidence demonstrating that any of FedEx's statements were false or defamatory.[171]

Second, although Ms. Ashley may have faced economic harm and hardship as a result of her retirement from FedEx, this allegation does not satisfy the elements for breach of the implied covenant of good faith and fair dealing. To survive summary judgment, Ms. Ashley must demonstrate a material factual dispute as to whether FedEx acted unfairly or had an improper motive for disciplining her.[172] As discussed herein, she has not met this burden.[173] FedEx therefore is entitled to summary judgment on Ms. Ashley's claim for breach of the

---

[169] The elements of defamation pursuant to Alaska law are: "(1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) the existence of either 'per se' action ability or special harm." *MacDonald v. Riggs*, 166 P.3d 12, 15 (Alaska 2007) (citation omitted).

[170] *See, e.g.*, Docket 21-2 at 56-61 (FedEx February 1, 2018 Inter-office Memorandum re Workplace Violence); Docket 21-2 at 95-101 (March 1, 2018 FedEx Inter-office Memorandum re Allegation of Workplace Violence).

[171] *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion . . . .").

[172] *Crowley*, 253 P.3d at 1230; *Smith*, 240 P.3d at 844.

[173] *See supra* Part I of this order.

implied covenant of good faith and fair dealing notwithstanding any economic harm and hardship Ms. Ashley may have experienced after she retired.

**IT IS THEREFORE ORDERED THAT** FedEx's *Motion for Summary Judgment* at Docket 21 is GRANTED as to all claims brought by Ms. Ashley. The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 16th day of March, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE